LOYAL MYSTIC LEGION OF AMERICA v. EMMA A. RICHARDSON.

FILED MAY 3, 1906. No. 14,254.

Beneficial Associations: MEMBERSHIP. Where it appears from the constitution of a benefit society which insures the lives of its members that initiation and the payment of one advance assessment is indispensable to membership, the fact that the person's application has been accepted and his petition fee paid will not entitle his beneficiary to any insurance in the event of his death before he has been initiated and paid the one advance assessment required.

ERROR to the district court for Hall county: JAMES R. HANNA, JUDGE. *Reversed.*

*Tibbets Bros. & Morey,* for plaintiff in error.

*W. H. Thompson, contra.*

DUFFIE, C.

Article 22 of the constitution of the supreme council of the Loyal Mystic Legion of America is in the following language: "Only the supreme council or the board of directors shall have power and authority to constitute, suspend or reconstitute the subordinate councils of this order, which shall be done either by an officer of the supreme council, or by a member of the order duly commissioned by the board of directors through the supreme worthy councilor. A member so commissioned or any elective officer of the supreme council shall have power to install officers and obligate applicants for membership. Provided, that, if at the proper time for installing officers there is not present a supreme officer or a deputy of the order, then any elective officer of the council who has been regularly installed may perform the duty." Section 3 of the by-laws of subordinate councils provides for the formation of a subordinate council as follows: "Any number of persons, not less than ten, who are eligible and who shall comply with the rules and regulations of the supreme council, with the approval of the board of directors or its duly authorized representatives, may upon being duly obligated become members of this fraternity and may be constituted a subordinate council. The members of all councils will be known and designated in the ritual of the order as companions."

In November, 1901, one John Collins, a duly authorized deputy of the Loyal Mystic Legion of America, solicited applications for membership in that order and to form a subordinate council at Fort Collins, Colorado. He solicited

and received the application of Charles C. Richardson, and this application, with others, was forwarded to the supreme council at Hastings, Nebraska. The application was accepted, a certificate of membership issued by the supreme council and returned to Fort Collins. The beneficiary named in the certificate was Emma A. Richardson, mother of the applicant. November 20, 1901, was fixed on as the date to organize the subordinate council at Fort Collins, but for some reason no organization was perfected until December 30, 1901, at which time the applicants who had been passed by the supreme council, and who were present, were obligated and initiated by Collins, the deputy, the officers of the subordinate council elected, and the council duly organized. Collins at that time turned over to the worthy councilor the certificates of all applicants, and the worthy councilor and worthy secretary filled up and signed the blank certificate of membership printed on each of the certificates, Richardson's being in the following language: "Companion Charles C. Richardson became a member of Fort Collins Council No. 208 Loyal Mystic Legion of America of Fort Collins, state of Colorado, on the 30th day of December, 1901. Benjamin F. Evans, Worthy Councilor. Attest: Clyde H. Brown, Worthy Secretary." Prior to the meeting Richardson commenced work at a mill some 50 miles from Fort Collins, was not present at the meeting, was not initiated as a member and not obligated, unless, as claimed by defendant in error, the signing of his application which, we understand, contained the form of obligation administered to all members on their initiation constituted the taking of such obligation. Richardson was accidently killed on January 3, 1902, and Emma A. Richardson, the beneficiary named in his certificate, brought this action to recover from the plaintiff in error $1,000, the amount of said certificate, alleging that the deceased was a member of Fort Collins council No. 208 at the time of his death, and that each and every condition precedent on the part of the deceased and of the beneficiary had been complied with as provided in the application and

certificate, and in accordance with the constitution, rules and regulations of the order.

The principal defense was that Richardson had never become a member of the order, and that he had never complied with sections 18 and 20 of the by-laws of the supreme council, and sections 28 and 29 of the by-laws of the subordinate councils of the order. These by-laws required the payment of one advance assessment upon the receipt by a member of his certificate, the following being an extract from section 28 of the by-laws of the subordinate councils: "The applicant shall not be a member in good standing and entitled to benefits until he or she has received his or her certificate and paid one advance assessment." The following is an extract from section 20 of the by-laws of the supreme council: "Every person desiring benefits shall, on entering the order, pay one assessment, 20 per cent. of which shall be placed in the reserve fund, and after the first 12 assessments 80 per cent. of each assessment shall be placed in the benefit fund, which shall be used only to pay benefits to the members of the order in good standing holding benefit certificates." Richardson not being present when the subordinate council was organized the worthy councilor returned his certificate to Mr. Collins, the deputy organizer, who some time afterwards returned it to the worthy councilor. January 9, 1902, James T. Ogden, supreme worthy vice-councilor of the order, went to Fort Collins, and on his request Benjamin F. Evans, worthy councilor of Fort Collins council No. 208, delivered to him Richardson's certificate, taking his receipt therefor. At the date of the commencement of this action the certificate was in possession of the supreme council of the order, and on the application for membership some officer of the supreme council had indorsed the following: "Applicant failed to be present at organization of council and certificate returned and cancelled." A trial of the case resulted in a verdict for Mrs. Richardson, the beneficiary, and the supreme council has taken error from a judgment rendered thereon.

It is insisted by the defendant in error that Charles C.

Richardson was a member of the order notwithstanding his failure to be present at the organization of Fort Collins council No. 208, and notwithstanding he was never regularly initiated and obligated. In the application signed by Richardson is printed the following obligation: "I, the undersigned, in the presence of these witnesses and the Eternal God, do most solemnly promise that I will not reveal, but ever hold in strict confidence, the mysteries and secret work of the Loyal Mystic Legion of America; that I take this obligation of my own free will; that I will be faithful to and abide by the constitution and by-laws of the supreme, grand, and subordinate councils of the order; that I will strive to promote harmony and friendship among its members, deal justly and honestly with each member and family; that I will, to the best of my ability, aid in all proper ways to promote the interests of the order; that should I ever become delinquent or be suspended, and thereby forfeit my good standing in the order, I will regard this obligation just as binding upon me then as I do at this hour. To all of which I do hereby solemnly pledge my sacred honor. I hereby agree to the above conditions and obligations, and accept notice of the fact that no subordinate council has power or authority to waive the same."

Defendant in error insists that the signing of the application containing this form of obligation is, as to charter members, a taking of the obligation within the meaning of the constitution and by-laws of the order. We cannot agree with this contention. The application bears upon its face evidence that it is the form of application furnished by the grand council of the order to all applicants, those applying for membership in a council already organized, as well as those seeking to constitute and organize a new council. It contains blanks for the report of an investigating committee and for the report to be made by such committee. There is also the blank to be filled in by the secretary showing when the application was received by the council and the date of the election of the applicant. It is quite evident from an inspection of the application that the

obligation required on initiation ·is included therein that proposed members may be informed of the vow which they will be·required to take in case they are accepted into the order. Section 22 of the constitution of the supreme council, and section 3 of the by-laws of subordinate councils directing the proceedings to form a subordinate council, make it quite plain that each of the charter members shall be present at the organization and be duly obligated, and that until this is done the applicant cannot be considered a member of the order. As said in *Matkin v. Supreme Lodge,* 27 Am. St. Rep. 886, 82 Tex. 301.

"Where it appears from the constitution and by-laws of a secret order or benefit society which insures the lives of its members that initiation is indispensable to membership, and that it is only upon the death of a member that his beneficiary is entitled to receive his insurance, the fact that a person's application for membership has been accepted, and his 'proposition fee' paid, will not entitle his beneficiary to any insurance in the event of his death before he has become initiated as a member of the society."

The best consideration which we have been able to give this case satisfies us that, under the rules and regulations of the order as defined in its constitution and by-laws, Richardson never became a member of the society and that his certificate never had any life or vitality. This conclusion renders it unnecessary to discuss other questions raised by the record and discussed in the briefs of counsel.

We recommend a reversal of the judgment.

ALBERT and JACKSON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded.

REVERSED.